USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _8/1/2016_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THOMAS ARMINIO,

                Plaintiff,

    -against-

LYSONIA HOLDER, JOHN DOE #1,
and JOHN DOE #2, Employees of the
State of New York,

                Defendants.

No. 15 Civ. 5812 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

    Plaintiff Thomas Arminio brings this action against Defendants Lysonia Holder, John Doe #1, and John Doe #2. Plaintiff seeks declaratory relief pursuant to 28 U.S.C. § 2201, and compensatory and punitive damages for violations of his civil rights under 42 U.S.C. § 1983. Plaintiff's Amended Complaint asserts claims of excessive force against Defendants Holder, John Doe #1, and John Doe #2 under the Fourth Amendment of the United States Constitution and under Article 1, § 12 of the New York State Constitution, as well as a claim of failure to intervene against Defendant Holder for failing to prevent the alleged use of excessive force.

    Presently before this Court is Defendant Holder's motion to dismiss Plaintiff's Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, the motion to dismiss the claims against Defendant Holder is DENIED, Plaintiff's claims under the New York State Constitution are DISMISSED,[1] and the claims against Defendants John Doe #1 and John Doe #2 are DISMISSED.

---

[1] Defendant argues, and Plaintiff concedes, that the second cause of action alleged in the Amended Complaint for violations of the New York State Constitution must be dismissed for lack of subject matter

## BACKGROUND[2]

On the morning of July 27, 2012, Plaintiff Thomas Arminio was parked at a gas station to buy a coffee and a newspaper before going to a doctor's appointment. (Am. Compl. ¶ 7, ECF No. 13.) When Plaintiff went to leave the gas station, he attempted to squeeze through two vehicles stopped at the pumps, at which point his rear bumper came into contact with another vehicle's front bumper. (*Id.* at ¶ 8.) Someone called 911 to report the incident, and, a short time later, Defendant Lysonia Holder, a New York State Trooper, responded in her patrol car. (*Id.* at ¶ 5, 8.) Following Holder's instructions, Plaintiff parked his vehicle "off to the side" and remained in his vehicle while Holder spoke to the driver of the other vehicle, after which Holder went back to her own vehicle. (*Id.* at ¶¶ 9-10.) Plaintiff alleges that it was hot that day, and sitting in the heat exacerbated his heart condition. (*Id.* at ¶¶ 10-11.)

After some length of time, Plaintiff got out of his vehicle to tell Holder that he was feeling dizzy, he had a heart condition, he was on his way to a doctor's appointment, and he wanted to leave soon because he felt ill. (*Id.* at ¶ 11.) Plaintiff also showed Holder his identification card, which identified him as an Implanted Cardiac Device patient, and told Holder that he had a pacemaker/defibrillator in his chest. (*Id.*)

Holder told Plaintiff to wait for her in his vehicle and that she would "be right with" him. (*Id.* at ¶ 12.) As Plaintiff returned to his vehicle, he became dizzy and, to avoid collapsing, sat down. (*Id.*) A passerby helped Plaintiff up, and he returned to his vehicle—but within a few minutes, two ambulances, a fire truck, and two other N.Y.S. Trooper vehicles arrived. (*Id.*)

---

jurisdiction under Federal Rule of Civil Procedure 12(b)(1). (*See* Def.'s Mem. of Law in Supp. of Def's Mot. to Dismiss ("Def. Mem.") at 7-9 (arguing both that Plaintiff failed to file the required notice of intention within 90 days of the incident and that the claims under the New York Constitution are redundant to the § 1983 claims), ECF No. 15; Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Dismiss ("Pl. Opp'n Mem.") at 5 ("Plaintiff concedes.").)

[2] The following facts are accepted as true for the purposes of deciding this Rule 12(b)(6) motion to dismiss.

An EMT approached Plaintiff's vehicle and told him that she wanted to take Plaintiff's vital signs and take him to the hospital. (*Id.* at ¶ 13.) Plaintiff refused her services and told the EMT that he did not call an ambulance, he did not want their help, and he could not pay for their services. (*Id.*) After a discussion between the EMT, Plaintiff, and Holder, it was agreed that, as long as Plaintiff did not drive, Plaintiff's son ("Thomas R.") could pick Plaintiff up from the gas station and take him to the hospital. (*Id.*) Plaintiff remained in his vehicle until his son arrived, and, upon arriving, Thomas R. parked his vehicle in a parking spot and got into Plaintiff's vehicle to ask his father what was going on.[3] (*Id.* at ¶ 14.)

Holder approached Plaintiff's vehicle on the passenger side and knocked on the glass. (*Id.* at ¶ 15.) Thomas R. identified himself, but when he was asked for identification, he told Holder that he left his identification in his wallet, which was in his vehicle. (*Id.*) Thomas R. then exited his father's vehicle and walked to his own vehicle with Holder. (*Id.*) Since Plaintiff knew that it was already agreed that he would go to the hospital with his son, he began to gather his belongings and to prepare to exit his vehicle. (*Id.* at ¶ 16.)

After Thomas R. left Plaintiff's vehicle, Defendants John Doe #1 and John Doe #2, also N.Y.S. Troopers, "positioned themselves at the front and the back of Plaintiff's vehicle, respectively." (*Id.* at ¶ 5, 16.) As Plaintiff started to get out of his vehicle, Doe #1 told Plaintiff that "he wanted to talk to him." (*Id.*) At that time, Doe #2 approached Plaintiff from behind, and Plaintiff tried to get back into his vehicle. (*Id.*) Doe #1 then ripped Plaintiff's door open, Doe #2 grabbed Plaintiff from behind and, "with no provocation or reason," threw both Plaintiff and Doe

---

[3] The distance between where Thomas R. parked his vehicle and where Plaintiff's vehicle was parked, as well as the visibility between the two locations, is not addressed in the Amended Complaint.

3

#1 to the ground. (*Id.* at ¶ 17.) Holder, "who was on her way back to Plaintiff's vehicle," joined the fray: she "charged" and "piled onto" Plaintiff.[4] (*Id.*)

Thomas R. watched as the three defendants "wrestled with [] Plaintiff, twisted his arms, and placed him into handcuffs" while Plaintiff "pleaded with the [d]efendants to get off of him" and "to release him because they had broken his arm." (*Id.* at ¶ 18.)

As a result, Plaintiff alleges that he suffered a number of injuries, including to his right arm, head, face, back, legs and neck, as well as physical pain and suffering, mental suffering, shock, and fright. (*Id.* at ¶ 19.) Plaintiff further alleges that "in using excessive force on [him], and arresting and imprisoning him, [Defendants] acted intentionally, willfully, maliciously, [and] with reckless disregard and deliberate indifference to [P]laintiff's rights." (*Id.* at ¶ 20.)

## STANDARD OF REVIEW ON A MOTION TO DISMISS

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead sufficient facts in his or her complaint "to state a claim to relief that is plausible on its face." *McGee v. Doe*, 568 F. App'x 32, 35 (2d Cir. 2014) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

"All reasonable inferences are drawn and viewed in the light most favorable to the

---

[4] It is unclear, based on the allegations, how far Defendant Holder was from Plaintiff when he was thrown to the ground by the Defendant John Doe officers. However, viewing the facts in the light most favorable to Plaintiff, this Court will infer that Holder was facing the altercation on her way back to Plaintiff's vehicle, and that she therefore saw the Doe officers rip Plaintiff's door open and throw Plaintiff to the ground. Defendant argues that Holder did not witness how the altercation began because she was not in the area and that Plaintiff has only asserted that Holder observed Plaintiff scuffling with the Doe officers and went to assist them in their attempt to restrain Plaintiff. (Def. Mem. at 5.) This interpretation is an overly narrow reading of the pleadings, particularly when viewed in the light most favorable to Plaintiff.

plaintiff." *McGee*, 568 F. App'x at 35 (citing *Chase Group Alliance L.L.C. v. City of New York Dep't of Fin.*, 620 F.3d 146, 150 (2d Cir. 2010)). In order for a claim to be plausible on its face, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *McGee*, 568 F. App'x at 35 (citing *Iqbal*, 556 U.S. at 678). A court must "merely [] assess the legal feasibility of the complaint," and not "assay the weight of the evidence which might be offered in support thereof." *DiFolco v. MSNBC Cable, L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (quoting *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998)). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," and "where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

## DISCUSSION

### I.      Section 1983 Claims

Under 42 U.S.C. § 1983, "[e]very person who, under color of any statute . . . of any State . . . subjects . . . any citizen of the United States . . . to the deprivation of any rights . . . secured by the Constitution . . . shall be liable to the party injured in an action at law . . . ." To prevail, a plaintiff must establish that "a person acting under color of state law deprived him of a federal right." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999).

### A.  *Excessive Force Claim Against the John Doe Defendants*

Though the motion to dismiss only addresses the claims against Defendant Holder, this Court will consider, *sua sponte*, whether Plaintiff's claims against the John Doe officers are barred by the applicable statute of limitations. Given the futility of naming the John Doe

Defendants now, this Court recognizes that those claims should be dismissed. *See, e.g.*, *Lapoint v. Vasiloff*, No. 15 Civ. 185 (MAD), 2016 WL 951566, at *6 n.2 (N.D.N.Y. Mar. 9, 2016) (noting that any effort to amend the plaintiff's complaint to identify John Doe Defendants over four years after the incident at issue was futile because neither Rule 15(c)(1)(C) nor Rule 15(c)(1)(A) would permit a subsequent amended pleading to relate back to the date of original filing); *Wilson v. King*, No. 08 Civ. 509 (GLS) (DHR), 2010 WL 3724128, at *11 n.1 (N.D.N.Y. Aug. 23, 2010), *report and recommendation adopted*, 2010 WL 3724127, *1 at n.1 (N.D.N.Y. Sept. 16, 2010) (finding that because John Doe officers had neither appeared nor been served within 120 days after the original complaint was filed, the complaint was dismissed without prejudice as to the unserved defendants); *Kearse v. Lincoln Hosp.*, No. 07 Civ. 4730 (PAC) (JCF), 2009 WL 1706554, at *2, (S.D.N.Y. June 17, 2009) (holding that the plaintiff's claims against a John Doe defendant were dismissed without prejudice but a new action could be filed if the plaintiff identified the defendant within the applicable statute of limitations).

Section 1983 claims are subject to a three-year statute of limitations in New York. *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013); *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 79 (2d Cir. 2015). In order to presently bring claims against the John Doe officers, assuming that their identities are discovered, the Amended Complaint would have to be amended once again to name these unknown defendants. However, Federal Rule of Civil Procedure 15(c)(1)(C), which provides one avenue for relation back, "preclude[s] relation back for amended complaints that add new defendants, where the newly added defendants were not named originally because the plaintiff did not know their identities." *Hogan*, 738 F.3d at 517 (citing *Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999)). *See Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 470 (2d Cir. 1995) ("As the amended complaint adding the individual police

officers does not relate back to the complaint naming the 'John Doe' officers, the claims brought against those officers are untimely.").

Recently, the Second Circuit considered this issue in a case involving the assault of a prisoner, Hogan, by three unidentified correctional officers in a New York State maximum security facility. *Hogan*, 738 F.3d at 513. Less than three months after the incident, the prisoner, proceeding *pro se*, brought a § 1983 action against, among others, the three unidentified officers. *Id.* The district court directed Hogan to identify the John Doe defendants through discovery as quickly as possible, and "[o]ver the course of three years, Hogan made repeated efforts to identify the John Does, including submitting over ten discovery demands and multiple requests under New York's Freedom of Information Law." *Id.* Hogan was unable to correctly identify the John Doe corrections officers. *Id.* at 513-14. Thereafter, the district court granted the defendants' motion to dismiss the complaint in its entirety. *Id.* at 517.

On appeal, the Second Circuit held that Hogan was time-barred from amending his complaint under Rule 15(c)(1)(C) because it is "clear that the lack of knowledge of a John Doe defendant's name does not constitute a 'mistake of identity.'" *Id.* at 518 (quoting *Barrow*, 66 F.3d at 470)). However, turning to Rule 15(c)(1)(A), the Second Circuit ultimately held that Hogan's claims against the John Doe Defendants were not time barred. *Id.* at 519-20. By applying N.Y. CPLR § 1024, which permits John Doe substitutions *nunc pro tunc*, the Second Circuit found that Hogan met both requirements of the CPLR and could therefore continue to identify the John Doe defendants. *Id.* at 518-20 (subsection (A) looks to the law that provides the applicable statute of limitations to determine whether an amended pleading relates back).

Here, Plaintiff is time-barred from amending his complaint to name the John Doe officers. Plaintiff's alleged assault took place on July 27, 2012, his original complaint was filed

on July 24, 2015, and the statute of limitations expired three days later, on July 27, 2015. As the Second Circuit made clear in *Hogan*, Plaintiff's lack of knowledge of the names of the John Doe officers does not constitute a "mistake of identity" under Rule 15(c)(1)(C). *Id.* at 517-18. Accordingly, as is the case here, Plaintiff cannot avail himself of the benefits of Rule 15(c)(1)(C) to amend his complaint and name the John Doe officers.

Moreover, Plaintiff is time-barred under Rule 15(c)(1)(A) because, unlike the plaintiff in *Hogan*, Plaintiff will not meet the requirements under CPLR § 1024. Plaintiff has not described the John Doe officers "in such form that will fairly apprise the party that [he] is the intended defendant." *Id.* at 519 (quoting *Bumpus v. N.Y.C. Transit Auth.*, 883 N.Y.S.2d 99, 104 (2d Dep't 2009)). Although Plaintiff does describe the date and time of the assault in his Amended Complaint, he does not provide "substantial detail concerning the appearance" of the John Doe officers that would give them notice that they are the intended defendants. *Id.* Most critically, there is no indication that Plaintiff has "[e]xercised due diligence, prior to the running of the statute of limitations, to identify the defendant by name." *Id.* (quoting *Bumpus*, 883 N.Y.S.2d at 104); *see, e.g.*, *Doe v. New York*, 97 F. Supp. 3d 5, 17-21 (E.D.N.Y. 2015) (claims untimely where plaintiff failed to act with due diligence). While Hogan was a *pro se* plaintiff who exercised diligence shortly after his incident took place, Plaintiff—represented by counsel—filed his complaint just days before the expiration of the three-year statute of limitations and has not demonstrated any effort undertaken to identify the officers.

Accordingly, Plaintiff's actions against the John Doe officers, even if they could be named at this juncture, would be untimely and must be dismissed.

B.  *Excessive Force Claim Against Defendant Holder*

In determining whether officers have used excessive force during an arrest, a court looks to whether the officer's use of force "is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to [the officer's] underlying intent or motivation.'" *Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). Under the Fourth Amendment, the proper application of the test of reasonableness "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. Additionally, the officer's use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* In calculating reasonableness, the fact that officers "are often forced to make split-second judgments . . . about the amount of force that is necessary in a particular situation" must be taken into account. *Id.* at 396-97.

In the Amended Complaint there are two alleged instances of excessive force used against Plaintiff: first, when, without provocation or reason, the John Doe officers threw Plaintiff to the ground and proceeded to wrestle with him; and second, when Holder piled onto Plaintiff during that altercation. Each instance as alleged must be construed in the light most favorable to Plaintiff, and Holder concedes that there are sufficient facts alleged against the John Doe officers to support a claim of excessive or unreasonable force against them. (Def. Mem. at 5.)

Given the facts and circumstances confronting Holder, and taking Plaintiff's allegations in the Amended Complaint as true, Plaintiff has pleaded sufficient facts in his Amended Complaint to support a plausible claim for excessive force against Holder because her actions

cannot be deemed objectively reasonable. Plaintiff alleges that Holder "was on her way back to Plaintiff's vehicle" when Doe #2 "grabbed Plaintiff from behind" without provocation or reason and "threw Plaintiff to the ground together" with Doe #1. (Am. Compl. ¶ 17.) Nothing in the Amended Complaint suggests that Plaintiff was committing a crime, posing an immediate threat to the safety of the officers or anyone else, resisting arrest, or that his conduct at the time warranted three officers wrestle Plaintiff to the ground in order to handcuff him, particularly given that Holder was aware of his frail and weakened state. On the contrary, prior to the altercation at issue, Holder told Plaintiff he was free to leave the gas station, provided that his son drove. (*Id.* at ¶ 13.) Not only did Plaintiff claim to feel dizzy and ill, but he also communicated that to Holder and an ambulance was later called. (*Id.* at ¶ 12.) A reasonable officer in Holder's position would not have chosen to charge and assist in the forcible take down of a man who was known to be in an already weakened and frail state.

Though Holder may have had to make a split-second judgment in calculating the amount of the force she used when rushing to aid her fellow officers, under the circumstances, it cannot be said as a matter of law that her actions were reasonable. As already mentioned, Holder concedes that Plaintiff has alleged sufficient facts to support a claim of excessive or unreasonable force against the two John Doe officers. Holder became part of that altercation, which resulted in Plaintiff's injuries; and given Holder's unique knowledge of the situation, she used excessive force on Plaintiff when she "charged" and "piled onto" him rather than coming to his aid.[5] (*Id.*) Thus, Plaintiff has pleaded sufficient facts in his Amended Complaint to assert a plausible claim of excessive force against Holder.

---

[5] Holder has not disputed that excessive force was used against Plaintiff. Rather, Holder asserts that she is entitled to qualified immunity as a defense to the claim of excessive force. As discussed *infra*, her qualified immunity defense fails because it cannot be granted at this stage as a matter of law.

### C. *Failure to Intervene Claim against Defendant Holder*

A law enforcement officer is "under a duty to intercede and prevent fellow officers from subjecting a citizen to excessive force[.]" *Figueroa v. Mazza*, --- F.3d ----, No. 14 Civ. 4116, 2016 WL 3126772, at *11 (2d Cir. June 3, 2016) (*citing O'Neill v. Krzeminski*, 839 F.2d 9, 11-12 (2d Cir. 1988)). Thus, an officer may be held liable under 42 U.S.C. § 1983 for failing to intercede "if he [or she] observes the use of force and has sufficient time to act to prevent it." *Id.* An officer is only liable "when (1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that [the plaintiff's] constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008) (citing *O'Neill*, 839 F.2d at 11-12). The officer's failure to intervene must have allowed fellow officers to violate [the plaintiff's] "'clearly established statutory or constitutional rights' of which a reasonable person would have known." *Id.* (quoting *McLaurin v. New Rochelle Police Officers*, 373 F. Supp. 2d 385, 395 (S.D.N.Y. 2005)).

Furthermore, although the assault's duration is one consideration in determining whether an officer had a realistic opportunity to intervene, "courts must evaluate each case on its own facts, keeping in mind that circumstances other than an assault's duration might bear significantly on an officer's ability to stop it from happening." *Figueroa*, 2016 WL 3126772, at *13. "[T]he essential inquiry is whether, under the circumstances actually presented, an officer's failure to intervene permits a reasonable conclusion that [he or she] became a 'tacit collaborator' in the unlawful conduct of another." *Id.* at *11 (citing *O'Neill*, 839 F.2d at 11-12).

The facts alleged in the Amended Complaint support a claim for failure to intervene against Defendant Holder.[6] Although Holder would not have been able to stop the initial use of excessive force when Plaintiff was initially pulled from his vehicle and thrown to the ground, she was present while the John Doe officers wrestled with Plaintiff and subsequently joined them by piling on top of Plaintiff. Before Holder piled onto them, she was under a duty to prevent the unnamed officers from continuing to use excessive force against Plaintiff.

Holder had a realistic opportunity to intervene and prevent further harm to Plaintiff. Holder argues that she did not have a realistic opportunity to intervene to prevent the harm to Plaintiff because by the time she reached the scene, the altercation was already underway and it happened very quickly. (Def. Mem. at 10.) However, this argument lacks merit because if Holder had sufficient opportunity to charge and join the John Doe officers in the alleged mistreatment of Plaintiff, then she had ample opportunity to intervene and attempt to stop the officers. Because the facts suggest that Holder assisted in the onslaught of Plaintiff, she similarly would have had an opportunity to intervene to stop the assault.

A reasonable person in Holder's position would have known that Plaintiff's constitutional rights were being violated when he was thrown down to the ground and assaulted by the John Doe officers. The Amended Complaint alleges that Holder was on her way back to Plaintiff's vehicle, suggesting that she was facing towards Plaintiff's direction and saw him being thrown to the ground. Holder argues that Plaintiff's allegations fail to establish that she knew that

---

[6] When a law enforcement officer directly participates in the alleged use of excessive force, he or she "may not be held liable both for using excessive force and for failing to prevent the use of excessive force." *Buchy v. City of White Plains*, No. 14 Civ. 1806 (VB), 2015 WL 8207492, at *3 (S.D.N.Y. Dec. 7, 2015). However, this District has allowed both claims to be brought in the alternative beyond the summary judgment stage. *See id.* ("The Court will allow the failure to intervene claim against [one officer] as an alternative to the excessive force claim [because a] reasonable jury could find [the officer] did not use excessive force against [the] plaintiff, but failed to prevent [the other officer] from doing so.") Thus, the failure to intervene claim can similarly be allowed to remain as an alternative to the excessive force claim beyond the motion to dismiss stage.

Plaintiff's constitutional rights were being violated because she observed the altercation in progress from a distance and a reasonable officer confronted with a similar situation would have assisted the John Doe officers in their attempts to restrain Plaintiff. (*Id.* at 10-11.) However, Holder concedes that Plaintiff has alleged sufficient facts to assert a claim of excessive force against the John Doe officers, and viewing the facts in the light most favorable to Plaintiff, a reasonable officer in Holder's position could have believed that the John Doe officers' actions were violating Plaintiff's constitutional rights.

Holder did not take reasonable steps to intervene. Holder knew that Plaintiff was frail, dizzy, feeling ill, told that he was not being detained, and, most importantly, free to go. Based on these facts, and viewing the facts in the light most favorable to the plaintiff, one could infer that a reasonable officer would have briefed the other officers on the scene as to Plaintiff's condition. *See McGee*, 568 F. App'x at 35 ("All reasonable inferences are drawn and viewed in the light most favorable to the plaintiff."). A reasonable officer in possession of such facts would know that such extreme force was not necessary to restrain Plaintiff, that Plaintiff's constitutional rights were being violated, and that she should take reasonable steps to intervene on Plaintiff's behalf. Thus, Plaintiff has pleaded sufficient facts in his Amended Complaint to assert a plausible claim against Holder for failure to intervene.

## II.     Defense of Qualified Immunity

Qualified immunity can be established by, and assessed on, the specific facts alleged in the complaint. *Garcia v. Does*, 779 F.3d 84, 97 (2d Cir. 2014) (citing *Wood v. Moss*, 134 S. Ct. 2056, 2066-67 (2014)). However, the party asserting the defense on a motion to dismiss faces a "higher burden" than the party trying to dismiss a case on qualified immunity grounds when moving for summary judgment. *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004).

"Although, 'usually, the defense of qualified immunity cannot support the grant of a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted,' a district court may grant a Rule 12(b)(6) motion on the ground of qualified immunity if 'the facts supporting the defense appear on the face of the complaint.'" *Hyman v. Abrams*, 630 F. App'x 40, 42 (2d Cir. 2015) (quoting *McKenna*, 386 F.3d at 435–36).

"[W]hen determining a motion to dismiss on qualified immunity grounds in advance of full merits discovery, the plaintiff's version of the facts is presumed to be true . . . ." *Dolson v. Vill. of Washingtonville*, 382 F. Supp. 2d 598, 601 (S.D.N.Y. 2005). A defendant asserting a qualified immunity defense on a Rule 12(b)(6) motion, as opposed to a motion for summary judgment, must accept that "the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *Hyman*, 630 F. App'x at 42 (quoting *McKenna*, 386 F.3d at 436).

An official is entitled to qualified immunity unless (1) the facts alleged by the plaintiff make out a violation of a constitutional right, and (2) the right was "clearly established" at the time of the defendant's conduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Courts are allowed to exercise discretion "in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236, 237-39 ("the first prong . . . is intended to further the development of constitutional precedent," but consideration of the second prong may be more straightforward at the pleading stage where "the precise factual basis for the plaintiff's claim or claims may be hard to identify"). In addition, the Second Circuit considers a third question, namely, "whether it was 'objectively reasonable' for a defendant to believe his actions were lawful." *Taravella v. Town of Wolcott*, 599 F.3d 129, 135 (2d Cir. 2010); *Higazy v. Templeton*, 505 F.3d 161, 169-70 (2d Cir.

14

2007) (citing *Kerman v. City of New York*, 374 F.3d 93, 108-09 (2d Cir. 2004)). "Objective reasonableness is established if 'the only conclusion a reasonable jury could reach is that reasonable officers would disagree on the constitutionality' of the [officer's] actions.'" *Allen v. City of New York*, 480 F. Supp. 2d 689, 710 (S.D.N.Y. 2007) (quoting *Cerrone v. Brown*, 246 F.3d 194, 203 (2d Cir. 2001)); *Amaker v. Haponik*, No. 98 Civ. 2663 (JGK), 2000 WL 343772, at *6 (S.D.N.Y. Mar. 31, 2000) (holding that, on a motion to dismiss, a finding of qualified immunity was "plainly premature" since facts were not yet sufficiently developed and defendants may have violated the plaintiff's constitutional rights).

As discussed above, Plaintiff sufficiently alleges excessive force and failure to intervene claims against Defendant Holder at this stage. Having determined that Plaintiff adequately pleads violations of his constitutional rights, Plaintiff satisfies the first prong on the qualified immunity defense. Similarly, Plaintiff easily satisfies the second prong of the test, as it is "well established that the use of excessive force in the course of an arrest is constitutionally prohibited." *Hayes v. County of Sullivan*, 853 F. Supp. 2d 400, 432 n.28 (S.D.N.Y. 2012) (quoting *Mickle v. Morin*, 297 F.3d 114, 122 (2d Cir. 2002)). At this stage, it cannot be said as a matter of law that reasonable officers would disagree on the constitutionality of Holder's actions when she saw Plaintiff being thrown to the ground and then chose to charge and pile onto him and the John Doe officers. Rather, a reasonable jury could find that reasonable officers would agree that Holder's actions were unconstitutional, and were, therefore, objectively unreasonable.

Making all inferences in favor of Plaintiff, an objectively reasonable officer in Holder's position, who knew of Plaintiff's frail state and saw him thrown to the ground and assaulted, would have known that contributing to the incident by piling onto Plaintiff and the John Doe officers would violate Plaintiff's Fourth Amendment rights. Accordingly, Defendant's motion to

dismiss on the ground of qualified immunity for both the excessive force and failure to intervene claims must be denied at this stage in the litigation.

## CONCLUSION

For the foregoing reasons, Defendant Holder's motion to dismiss the § 1983 claims alleged against her is DENIED. The claims asserted under the New York State Constitution are DISMISSED. The claims of excessive force against Defendants John Doe #1 and John Doe #2 are DISMISSED *sua sponte*. Defendant is directed to file an answer within 30 days hereof. The parties are directed to appear for an initial pre-trial conference on September 16, 2016, at 10:30 a.m. and are directed to bring a completed case management plan to the initial pre-trial conference. The Court respectfully directs the Clerk to terminate the motion at ECF No. 14.

Dated:   August 1, 2016                              SO ORDERED:
        White Plains, New York

                              NELSON S. ROMÁN
                          United States District Judge