USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/11/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THOMAS ARMINIO,

       Plaintiff,

-against-

LYSONIA HOLDER,

,

       Defendant.

No. 15 Civ. 5812 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

  Plaintiff Thomas Arminio brings this action against Defendant Lysonia Holder. Plaintiff seeks declaratory relief pursuant to 28 U.S.C. § 2201 and compensatory and punitive damages for violations of his civil rights under 42 U.S.C. § 1983. Plaintiff's Amended Complaint asserts claims of excessive force and failure to intervene to prevent the alleged use of excessive force against Defendant Holder under the Fourth Amendment of the United States Constitution.

  Presently before this Court is Defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the following reasons, the motion for summary judgment is GRANTED.

## BACKGROUND

  The following facts are drawn from the parties' 56.1 submissions and the record, and they are undisputed unless otherwise noted.

  On July 27, 2012, Plaintiff Thomas Arminio was involved in a motor vehicle accident at the Route 202 Hess gas station in Cortland, New York. (Pl.'s 56.1 ¶ 3, ECF No. 45.) Defendant Holder arrived at the scene and directed Plaintiff and the other individual involved in the

accident, Alison Johnson, to park towards the west side of the gas station. (*Id.* ¶ 5.) Defendant separated Plaintiff and Ms. Johnson while she processed paperwork from the accident. (*Id.* ¶ 6.) While Defendant was in her vehicle working on paperwork from the accident, Plaintiff approached her to request that she "hurry up this process and get [him] out of here." (*Id.* ¶ 8); (Arminio Dep. 129:18 – 21.) When walking back to his vehicle after speaking with Defendant, Plaintiff either fell or sat down on the ground briefly because he felt unwell.[1] (Pl.'s 56.1 ¶ 10.) Defendant observed Plaintiff's behavior and called for backup and medical assistance for Plaintiff. (*Id.* ¶ 12.) Troopers Zerrle and Fontanelli, both male, were among the responding emergency personnel. (*Id.* ¶ 14.) At some point, Trooper Fontanelli observed a knife in the front console area of Plaintiff's vehicle and communicated this information to Defendant and Trooper Zerrle. (*Id.* ¶ 15 – 17); (Arminio Dep. 83:2 – 84:12.)

After Defendant called for backup, Plaintiff's son, Thomas Arminio, Jr., arrived at the scene. (*Id.* ¶ 18.) Defendant stepped several yards away from Plaintiff and Plaintiff's vehicle in order to accompany Plaintiff's son to his vehicle so she could verify the validity of his driver's license. (*Id.* ¶¶ 19, 30.) Troopers Zerrle and Fontanelli remained with Plaintiff who was still in his vehicle. (*Id.* ¶ 20.) At some point, Plaintiff chose to exit his vehicle, and Troopers Zerrle and Fontanelli began approaching Plaintiff. (*Id.* ¶ 22.) Plaintiff then "quickly attempted to re-enter his vehicle." (*Id.* ¶ 23.) One of the troopers grabbed Plaintiff and attempted to pull him out of his vehicle. (*Id.* ¶ 25.) Plaintiff resisted the troopers and attempted to grab onto the vehicle's door handle and steering wheel. (*Id.* ¶ 26.) Troopers removed Plaintiff from his vehicle after a few seconds and the troopers took Plaintiff towards the back of Plaintiff's vehicle. (*Id.* ¶¶ 26 –

---

[1] Plaintiff states that he "sat down on the ground next to his car for a second to collect himself and got up and got back in his car." (Pl.'s 56.1 ¶ 10.) From Defendant's perspective, Plaintiff fell when he was walking back from her car. (Def.'s 56.1 ¶ 10, ECF No. 39.)

2

27.) Within a second of reaching the back of the car, Plaintiff and the troopers "ended up on the ground." (*Id.* ¶¶ 28 – 29.) During these incidents, Defendant was still several yards away with Plaintiff's son. (*Id.* ¶ 30.) At some point, Defendant approached the Plaintiff and the troopers. (Arminio Jr. ("Junior") Dep. 59:11 – 14); (Holder Dep. 181:2 – 6.) Plaintiff was handcuffed and the troopers then placed Plaintiff in a sitting position. (*Id.* ¶ 33, 35.) From the time Plaintiff was "placed on the ground until the handcuffs were applied took a matter of seconds." (*Id.* ¶ 34.) Plaintiff began to complain that his left arm was hurt or broken, and he was transported to a local hospital for treatment. (*Id.* ¶¶ 36, 39.) After an inventory search, two knives were discovered in Plaintiff's car. (*Id.* ¶ 44.) A blood test performed at the hospital later that day revealed that there was THC or cannabinoids substances in Plaintiff's system. (*Id.* ¶ 43.)

On January 20, 2016, Defendant moved to dismiss Plaintiff's Amended Complaint. (ECF No. 14.) The Court granted the motion to dismiss Plaintiff's claims under the New York Constitution for lack of subject matter jurisdiction and dismissed Plaintiff's claims against two John Doe defendants as barred by the statute of limitations. *Arminio v. Holder*, No. 15-CV-5812(NSR), 2016 WL 4154893, at *1 n.1, 8 (S.D.N.Y. 2016). However, Plaintiff's § 1983 claims against Defendant survived the motion to dismiss. *Id.* at *8.

## LEGAL STANDARD

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of pointing to evidence in the record, "including depositions, documents [and] . . . affidavits or declarations," *id.* at 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may also support an assertion that

there is no genuine dispute by "showing . . . that [the] adverse party cannot produce admissible evidence [in] support" of such a contention. Fed. R. Civ. P. 56(c)(1)(B). If the moving party fulfills its preliminary burden, the onus shifts to the non-moving party to identify "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations and citations omitted).

If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," a motion for summary judgment should fail. *Id.* at 258. Courts must "constru[e] the evidence in the light most favorable to the non-moving party and draw[ ] all reasonable inferences in its favor." *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (quotations and citations omitted). The party asserting that a fact is genuinely disputed must support their assertion by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A)–(B). "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999).

The nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation." *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quotations and citations omitted). Similarly, "a party cannot create an issue of fact by submitting an affidavit in opposition to summary judgment that contradicts prior deposition testimony." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 104 (2d Cir. 2010) (citing *Perma Research and Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969) (noting that such affidavits "greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact"). But the mere fact that a non-movant's factual allegations in opposition are "self-serving" does not

automatically render them insufficient to defeat summary judgment. *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 57 (2d Cir. 1998). Instead, summary judgment should be granted when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," where "that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In reviewing the record, "the judge's function is not himself to weigh the evidence and determine the truth of the matter," nor is it to determine a witness's credibility. *Anderson*, 477 U.S. at 249. Rather, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Id.* at 250. If the Court finds that one party to a case has "no real support for its version of the facts," a motion for summary judgment should be granted. *Community of Roquefort v. William Faehndrich, Inc.*, 303 F.2d 494, 498 (2d Cir. 1962).

## DISCUSSION

### I. Compliance with local rules

In her reply in further support of the motion for summary judgment, Defendant argues that her motion should be deemed unopposed because Plaintiff failed to comply with local rules and the rules of this Court. Specifically, Plaintiff did not serve a memorandum of law in opposition but only a declaration in opposition and Plaintiff submitted entire transcripts from depositions taken in this case. Loc. Civ. R. 7.1(b); Individual Practices R. 3(G)(iv). District courts have broad discretion to decide whether to penalize a party for failure to comply with local rules. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 – 74 (2d Cir. 2001). If a court elects to disregard Plaintiff's submissions for lack of compliance with its local rules, the court must still determine whether Defendant has met the burden of establishing the absence of any genuine

issue of material fact. *Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*, 378 F. Supp. 2d 448, 453 (S.D.N.Y. 2005).

While parties' compliance with the local rules is an important part of ensuring the efficient operation of the courts, the resolution of genuine disputes on their merits where possible is also significant. *Holford USA Ltd., Inc. v. Harvey*, 169 F.R.D. 41, 44 (S.D.N.Y. 1996) (citing *Traguth v. Zuck*, 710 F.2d 90, 94 (2d Cir. 1983)). Parties depend on the court's careful consideration of each side of a case and on their counsel to comply with all procedural rules, including the local rules. Here, the violations of the local rules, while inconvenient, are not so grave as to prevent the Court from fully addressing both sides of a summary judgment analysis. Therefore, to avoid penalizing Plaintiff for the mistakes of his counsel, the court will consider Plaintiff's submissions. *Lorillard Tobacco Co.*, 378 F. Supp. 2d at 453 ("This Court endeavors to avoid penalizing parties harshly for the procedural errors of their attorneys; therefore, we will overlook the deficiencies of defendants' submission in opposition to the present motion.").

## II.     Excessive force claims

Defendant asserts that she is entitled to summary judgment because there are no genuine disputes of material fact, and there is no evidence that Defendant used excessive force or failed to intervene in the use of excessive force by the troopers.

When considering excessive force claims under the Fourth Amendment, courts must "examine whether the use of force is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to [the officers'] underlying intent or motivation.'" *Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006). Courts then "consider the *facts and circumstances* of each particular case, including the crime committed, its severity, the threat

of danger to the officer and society, and whether the suspect is resisting or attempting to evade arrest." *Id.*

In arguing that Defendant should be granted summary judgment for the excessive force and failure to intervene claims, Defendant asserts that she had no personal involvement in any use of force against Plaintiff. It is well settled that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite for an award of damages under § 1983." *Provost v. City of Newburgh,* 262 F.3d 146, 155 (2d Cir. 2001) (quoting *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994)). "A police officer is personally involved in the use of excessive force if he either: (1) directly participates in an assault; or (2) was present during the assault, yet failed to intercede on behalf of the victim even though he had a reasonable opportunity to do so." *Russo v. DeMilia,* 894 F. Supp. 2d 391, 414 (S.D.N.Y. 2012) (quoting *Jeffreys v. Rossi,* 275 F. Supp. 2d 463, 474 (S.D.N.Y. 2003)).

### A. *Direct participation*

Here, the excessive force occurred when the troopers extracted Plaintiff from his vehicle, brought him to the ground, and handcuffed him, which resulted in Plaintiff's broken arm. It is undisputed that Defendant did not participate in removing Plaintiff from the car or bringing him to the ground. (Arminio Dep. 203:12 – 17, 204:14 – 24); (Holder Dep. 177:9 – 12, 182:23 – 24, 183:1 – 8.) In fact, Defendant was with Plaintiff's son, yards away from Plaintiff's car. (Junior Dep. 52:17 – 18, 58:17 – 19, 67:6 – 15); (Holder Decl. ¶ 27, ECF No. 41-1.) Once Plaintiff was on the ground, his "face was looking down into the ground" and he didn't "know who was doing what." (Arminio Dep. 250:4 – 9.) Plaintiff testified that at some point, Defendant rushed over to assist the troopers and that all three individuals, the troopers and Defendant, were on top of him when he was handcuffed, but Plaintiff could not identify the handcuffing officer, nor could

7

Plaintiff testify as to what particular act Defendant undertook such that she applied excessive force upon Plaintiff. (Arminio Dep. 203:18 – 22, 204:4 – 13, 248:13 – 25.) From the evidence in the record, no jury could reasonably conclude that Defendant handcuffed the Plaintiff or otherwise personally used excessive force against Plaintiff.

"[A]n arrestee's 'inability to positively identify those who allegedly violated his rights is not *per se* fatal to his claims.' " *Shankle v. Andreone,* No.06-CV-487(NG)(LB), 2009 WL 3111761, at *5 (E.D.N.Y. Sept. 25, 2009) (quoting *Davis v. Callaway,* No. 05-CV-00127, 2007 WL 1079988, at *8 (D. Conn. April 9, 2007)); *Jeffreys v. Rossi,* 275 F. Supp. 2d 463, 474 (S.D.N.Y. 2003) ("A plaintiff need not establish who, among a group of officers, directly participated in the attack and who failed to intervene.")). This is particularly true where, as here, the officers' alleged actions would have prevented the plaintiff from identifying which of the officers specifically engaged in the bad acts. *Shankle,* 2009 WL 3111761, at *5 (citing *Davis,* 2007 WL 1079988, at *9). In those cases, the burden shifts to each defendant to disprove his or her involvement. *Universal Calvary Church v. City of New York,* 99-CV-4606(RPP), 2000 WL 1538019, *63 (S.D.N.Y. Oct. 17, 2000). "To shift this burden, however, plaintiff must demonstrate first that *each* of the defendants acted tortiously." *Paul v. City of Rochester,* 452 F. Supp. 2d 223, 228 (W.D.N.Y. 2006). In *Paul,* the plaintiff brought a § 1983 action against several police officers for injuries he sustained during a search. The officers ordered the plaintiff to lie on his stomach, then one officer handcuffed his hands behind his back and then stepped on his knee and back. *Id.* at 227. While the conduct described by the plaintiff was objectively unreasonable, the court granted summary judgment for the defendants in part because the plaintiff could not show that each of the defendants acted tortiously. *Id.* at 227 – 28. The court granted summary judgment for similar reasons in *Hunter v. County of Orleans.* No.

12-CV-6173, 2013 WL 6081761, at *8 – 10 (W.D.N.Y. Nov. 19, 2013). In *Hunter,* the plaintiff alleged that four officers used excessive force when they pushed the front door of her residence open so hard that the door slammed into her and pushed her across the room and into the refrigerator. *Id.* at *1. The court granted summary judgment for the defendants because the plaintiff could not identify who pushed open the door, and "the evidentiary proof before the Court on this motion does not show that each defendant acted tortiously." *Id.* at *8.

Here, similar to *Paul* and *Hunter*, there is no evidence that Defendant used excessive force or otherwise acted unlawfully. Plaintiff himself states that he "got [his] arm broken and . . . the crap beat [sic] out of [him] by "two cops," which indicates that only two out of the three involved officers acted tortiously. (Arminio Dep. 197:5 – 14.) Neither Plaintiff nor any other witness can identify who handcuffed Plaintiff or identify any use of excessive force or other tortious action by Defendant. (*Id.* 250:2 – 9; 252:18 – 24, 253:2 – 18); (Junior Dep. 64:9 – 12); (Holder Dep. 177:7 – 16); (Jackson Decl. ¶¶ 13 – 14, ECF No. 41-3); (Fontanelli Decl. ¶ 23, ECF No. 41-2.)[2] Plaintiff's son testified that a male officer, not Defendant, had his knee in Plaintiff's back and another officer twisted Plaintiff's arm to put on the handcuffs. (Junior Dep.

---

[2] At most, Plaintiff testifies that Defendant "jumped on the pile after [they] were already down on the ground" and that he knows that Defendant joined the troopers because he felt her weight. (Arminio Dep. 204:17 – 24.) However, this alleged use of force is not objectively unreasonable in light of the circumstances, and based on the evidence no reasonable jury could conclude that Defendant simply decided to join the troopers in beating Plaintiff. *See Jones v. Parmley,* 465 F.3d 46, 61 (2d Cir. 2006). At the time the troopers took Plaintiff to the ground, Defendant was yards away from Plaintiff with his son. (Junior Dep. 52:17 – 18, 58:17 – 19, 67:6 – 15); (Holder Decl. ¶ 27.) Defendant knew that Plaintiff had at least one knife in his vehicle, and she saw the troopers struggling with Plaintiff right outside of his vehicle. (Arminio Dep. 84:6 – 24, 85:14 – 16); (Holder Dep. 143:1 – 24.) It is objectively reasonable for an officer to intervene if she has reason to believe that an individual has a weapon. *Garcia v. Greco,* No. 05-CV-9587, 2010 WL 446446, at *7 (S.D.N.Y. Feb.9, 2010) (granting summary judgment because the defendant's use of force against the plaintiff, hitting the plaintiff with fists and radios, was objectively reasonable due to the defendant's "interest in preventing the escape of a gun-wielding fugitive, as well as his interest in the safety of his fellow officers"); *Hardy v. Plante,* No. 06-CV-687(LEK)(RFT), 2009 WL 249787, *6 – 7 (N.D.N.Y. Feb. 3, 2009) (holding that the defendants' use of a taser was objectively reasonable as a matter of law because the defendants had reason to believe that the plaintiff had a knife and because the plaintiff was struggling with the officers); *see also Salim v. Proulx,* 93 F.3d 86, 92 (2d Cir. 1996) (holding that an officer who shot an individual during a struggle over the officer's weapon was entitled to qualified immunity in an excessive force action).

65:11 – 25, 66:2 – 7.) He did not recall what Defendant did when she went to assist the troopers after Plaintiff was on the ground, and he also could not recall which officer placed the handcuffs on the Plaintiff. (*Id.* 63:20 -24, 64:9 – 12.) Defendant, however, offers testimony from three individuals that a male officer handcuffed Plaintiff.[3] (Fontanelli Decl. ¶ 23); (Holder Dep. 177:7 – 16); (Loprieno Decl. ¶ 13, ECF No. 41-4.)

Despite Plaintiff's speculative assertions, the record is devoid of any evidence from which a reasonable factfinder could find that Defendant used excessive force against Plaintiff. New York law enforcement officers, such as Defendant, have a sacred duty to uphold United States and New York law, and allegations of excessive force, so excessive as to break a plaintiff's arm, by an officer must be taken seriously. *See* N.Y. Const. art. XIII. However, where there is no evidence from which a reasonable jury could determine that an officer used excessive force, summary judgment must be granted on that claim. Here, at most, the evidence shows that Defendant joined the troopers once he was already on the ground.[4] (Junior Dep. 58:10 – 24, 59:2 – 20); (Holder Dep. 181:15 – 24.) This is insufficient to support a claim for excessive force.[5] Accordingly, Defendant's motion for summary judgment on Plaintiff's

---

[3] Plaintiff's son could not identify the gender or identity of the individual who handcuffed Plaintiff. (Junior Dep. 65:11 – 25, 66:2 – 7.)

[4] Parties dispute whether Defendant "jumped" onto the troopers and Defendant while they were on the ground. However, this is not a genuine dispute because no reasonable factfinder would find Plaintiff's account to be credible. *See Chapel Park Villa, Ltd. v. Travelers Ins. Co., Inc.*, 02-CV-407F, 2006 WL 2827867, at *8 (W.D.N.Y. Sept. 29, 2006) (holding that no reasonable juror could find the plaintiff's account credible because the plaintiff's testimony was contradicted by other testimony and because there was no other direct evidence on the record to support the plaintiff's account). Plaintiff testifies that Defendant jumped on him, but he did not see her approaching him; he only felt additional weight. (Arminio Dep. 204:17 – 24.) Plaintiff's son at one point referred to Defendant jumping on the troopers and Plaintiff, but when asked specifically what Defendant did when she arrived at the Plaintiff and troopers, he said, "I don't recall" and he was unable to provide any other details about her actions or movements. (Junior Dep. 63:14 – 24, 64:2 – 12.) Three other witnesses, not including Defendant, testified that Defendant never placed her hands on Plaintiff. (Loprieno Decl. ¶ 13); (Jackson Decl. ¶ 16.); (Fontanelli Decl. ¶ 26.) Because Plaintiff's version of events is only supported by his testimony and no other evidence on the record and is directly contradicted by testimony from three other individuals not including Defendant, no reasonable jury could decide that Plaintiff jumped on Defendant. There is no genuine dispute of material fact.

[5] *See* n.2.

excessive force claim is granted. *See, e.g., Coleman v. Hauck,* No. 09–CV–1391(GTS)(GHL), 2012 WL 4480684, at *9 (N.D.N.Y. Sept. 26, 2012) (granting summary judgment for certain defendants on personal involvement grounds where plaintiff argued that "[a]ll named Defendants responded to the scene where Plaintiff was repeatedly struck and kicked in the face" but failed to point to record evidence establishing that those defendants arrived at the scene before the use of force was applied). *Konovalchuk v. Cerminaro,* 11-CV-1344(MAD/CFH), 2014 WL 272428, at *14 (N.D.N.Y. Jan. 24, 2014) (granting summary judgment because the plaintiff's claim that the defendant participated in an assault was "speculative and conclusory" compared to the defendant's testimony that he was not present for the assault).

### B. *Failure to intercede*

Summary judgment must also be granted on Plaintiff's failure to intercede claim. "[A]ll law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir. 1994). For an officer to be held liable, she must have (1) actual knowledge of the use of excessive force by other officers, (2) had a realistic opportunity to intercede and prevent the harm from occurring, and (3) intentionally refused or failed to take reasonable measures to stop the use of excessive force. *Cicio v. Lamora,* No. 08-CV-431, 2010 WL 1063875, at *8 (N.D.N.Y. Feb. 24, 2010) (citing *Curley v. Village of Suffern,* 268 F.3d 65, 72 (2d Cir. 2001)). "Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Haralambous v. Hubbs,* No. 13-CV-1916(JCH), 2015 WL 3444328, at *3 (D. Conn. May 28, 2015). Of course, where the officer is a direct participant in the allegedly excessive use of force,

the failure to intervene theory of liability is inapplicable. *See Simon v. City of New York*, No. 09–CV–1302(ENV)(RER), 2011 WL 317975, at *12 (E.D.N.Y. Jan. 3, 2011) (citing *Morgan v. County of Nassau*, 720 F. Supp. 2d 229, 240 (E.D.N.Y. 2010)). Defendant argues that judgment should be granted in her favor as a matter of law because she neither had actual knowledge that the troopers were using excessive force nor a realistic opportunity to intervene had she known that the troopers were using excessive force.

As discussed above, the alleged excessive force occurred when Plaintiff was removed from the car, taken to the ground, and handcuffed. The parties do not dispute that Defendant and the troopers knew that Plaintiff had a knife and a tool resembling a knife in plain view in his car. (Arminio Dep. 84:6 – 24, 85:14 – 16); (Pl.'s 56.1 ¶ 17.) They also do not dispute that Defendant was with Plaintiff's son and yards away from Plaintiff and Plaintiff's vehicle when the troopers removed Plaintiff from his car and brought him to the ground. (Junior Dep. 52:17 – 18, 58:17 – 19, 67:6 – 15); (Holder Decl. ¶ 27.) However, there is scant evidence from which a reasonable jury could find that Defendant, who was verifying Plaintiff's son's license, actually observed the alleged use of excessive force as they happened. (Arminio Dep. 179:15 – 25, 181:3 – 11.) Rather, it appears that Defendant merely observed that the troopers were physically struggling with an individual who had access to a knife and intervened to secure the safety of the scene. (Arminio Dep. 84:6 – 24, 85:14 – 16); (Junior Dep. 58:10 – 24, 59:2 – 20); (Holder Dep. 143:1 – 11, 167:6 – 18.) "Mere inattention or inadvertence, it should be noted, does not rise to a level of deliberate indifference [to taking reasonable steps to intervene] sufficient to support liability for failure to intervene." *Demosthene v. City of New York*, No. 14-CV-816(SJ)(VMS), 2015 WL 5093116, at *10 (E.D.N.Y. June 26, 2015) (internal quotation marks omitted) (quoting *Cicio v. Lamora*, No. 08-CV-431(GLS)(DEP), 2010 WL 1063875, at *8 (N.D.N.Y. Feb. 24, 2010)).

Assuming Defendant had actual knowledge of the use of excessive force, there is still no evidence to support a failure to intercede claim because there is no genuine dispute that the evidence shows that the alleged excessive force happened too quickly to allow Defendant a meaningful opportunity to intervene. Plaintiff's son testified that Defendant was behind him when he saw the troopers pull Plaintiff from the car, and that she had not made it to the troopers when Plaintiff was taken down. (Junior Dep. 59:6 – 18.) Both of those events happened in less than a handful of seconds. (*Id.* 57:3 – 4); (Arminio Dep. 194:15 – 25, 195:1 – 6); (Holder Decl. ¶ 35). Plaintiff's son testified that "it all happens so fast. I don't remember exactly who was where and doing what." (Junior Dep. 51:6 – 8.)) Plaintiff also testified, "This happened so fast. So many things were going on at the same time." (Arminio Dep. 199:23 – 25, 200:2.) By the time Defendant approached the troopers and Plaintiff, they were essentially a pile on the ground, and the handcuffing took place seconds after Plaintiff and the troopers were on the ground. (Arminio Dep. 204:17 – 24.) While officers must intervene when they see that other officers are using excessive force, *Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir. 1994), intervention takes time. On some occasions, as in this case, the seconds it takes for excessive force to occur are not enough to provide an officer with a realistic opportunity to intervene. The evidence shows that the events here occurred in such rapid succession, no reasonable jury could infer that Defendant could have intervened in sufficient time to prevent Plaintiff's injuries. *See Raffaele v. City of New York,* 242 F. Supp. 3d 152, 158, 161 (E.D.N.Y. 2017) (dismissing the plaintiff's failure to intercede claim because the three-second duration of the alleged excessive force was not sufficient time to intercede); *Haralambous,* 2015 WL 3444328, at *5 (granting summary judgment for the defendants because, although they were at the scene when the alleged abuses occurred, no reasonable jury could infer that they had sufficient time to prevent another officer

from pulling the plaintiff up from the ground by his handcuffs); *Wright v. City of Waterbury*, 07-CV-306(CFD), 2011 WL 1106217, at *6 (D. Conn. Mar. 23, 2011) (granting summary judgment for the defendant on the plaintiff's claim that he failed to intervene in a beating because, although he was close to the assault, the blows were struck in such rapid succession that Plaintiff had no meaningful opportunity to intercede).[6]

## CONCLUSION

For the foregoing reasons, Defendant Holder's motion for summary judgment is GRANTED. The Court respectfully directs the Clerk to terminate the motion at ECF No. 38 and to close the case.

Dated: January 11, 2019
       White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge

---

[6] Because Defendant's motion for summary judgment is granted, the Court will not address Defendant's qualified immunity argument. However, had Defendant not otherwise been entitled to summary judgment for other reasons, she would have been granted qualified immunity. *See Salim v. Proulx*, 93 F.3d 86, 92 (2d Cir. 1996).